W. P. Iverson & Company, Incorporated, a Delaware Corporation, Appellant, v. Dunham Manufacturing Company, an Illinois Corporation; Motor Chemical Corporation, a Delaware Corporation; National Cylinder Gas Company, a Delaware Corporation; Leo Corporation, an Illinois Corporation; G. R. Stewart, and Dean Francis, Appellees.

Gen. No. 47,307.

First District, First Division.

June 30, 1958.

Released for publication September 29, 1958.

Eckhart, Klein, McSwain & Campbell, of Chicago (William A. McSwain, and James O. Silliman, of counsel) for plaintiff-appellant.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago (Howard Ellis, J. Benjamin Cleaver, Don H. Reuben, and Ervin R. Klika, of counsel) for Dunham Manufacturing Company, National Cylinder Gas Company, and G. R. Stewart, defendants-appellees.

Percival Thompson, and Richard A. Lewin, for Motor Chemical Corporation, defendant-appellee.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

W. P. Iverson & Company, Incorporated, a Delaware corporation, the plaintiff (also referred to herein as "Company"), brought suit against the defendants to recover damages caused by defendants' alleged malicious interference, without legal cause or justification, with the contractual relationship between plaintiff and the defendant Motor Chemical Corporation, which interference it is alleged resulted in a termination of the contract between the plaintiff and the Motor Chemical Corporation. This appeal is taken from an order entered in the Superior Court of Cook County striking plaintiff's third amended complaint and dismissing the suit.

The amended complaint is in two counts. Count one is against the Dunham Manufacturing Company, an Illinois corporation (hereafter referred to as "Dunham"), Motor Chemical Corporation, a Delaware corporation (hereafter referred to as "Motor"), National Cylinder Gas Company, a Delaware corporation (hereafter referred to as "National"), Leo Corporation, an Illinois corporation, G. R. Stewart and Dean Francis. It is alleged that on June 1, 1950 the plaintiff entered into a contract with Motor whereby Motor appointed the plaintiff as agent for a term of five years, on a commission basis, for the sale of products known as PD and PD-F, fluids which are used to reduce carbonization in gas combustion engines. (A copy of the contract was attached to the complaint.) It further alleges that National, Leo Corporation, Stewart and Francis, "or some of them, owned or controlled the patents and trade-marks related to said PD products"; that Francis and Stewart were officers and directors of Motor; that Stewart was vice-president of both Motor and Dunham, that Dunham was a wholly owned subsidiary of National; and that National, Motor and Dunham

409

had the same Chicago address. It also alleges that plaintiff has expended time and effort in advertising and promoting the products PD and PD-F and that thereby a lucrative market for such products was developed throughout the world; that from the date of the inception of the contract to December 13, 1951 Motor paid to plaintiff the agreed commissions on sales made by it; that National, Leo Corporation, Stewart, Francis, Motor and Dunham, "or some of them, with full knowledge of the rights of plaintiff and the obligations of defendant Motor under said contract, wrongfully conspired, combined and confederated among themselves to and did in fact (a) make it impossible for Motor to perform its obligations under the contract, (b) deprive plaintiff of its profits under the contract, (c) defeat plaintiff's rights thereunder, and (d) continue the sale of PD products through Dunham in order to avoid payment to plaintiff of its rightful profit under plaintiff's contract with Motor"; that the defendants had secured from the plaintiff the plaintiff's trade and business methods and know-how, customer contacts and lists of customers and potential customers, in order to successfully carry on the business through Dunham; that the plaintiff had developed a new market for the products in the marine industry, an industry in which the plaintiff was well acquainted; that on November 28, 1951 the defendants caused Motor to be voluntarily dissolved for the purpose of avoiding the contract between plaintiff and Motor, and in a manner presently unknown to plaintiff the defendants, "or some of them," caused the assets of Motor to be dissipated by action of Motor's stockholders and caused the inventory of Motor to be acquired by, and the business of supplying PD products to be transferred to, Dunham; that the defendants during January, February, March and April of 1952 had constantly reassured the plain-

410

tiff as to the nature of the relationship between the plaintiff and Dunham, and at the same time Stewart was secretly engaged in establishing a New York sales office for Dunham in order to take over plaintiff's business; that on April 30, 1952 the plaintiff was notified that its services and sales would no longer be accepted after May 1, 1952.

In count two, filed against Dunham and Motor, the plaintiff, after alleging the relationship between National, Motor, Dunham and Stewart, stated that on December 27, 1951 and January 2, 1952 notice of dissolution of Motor was sent to Motor's customers by Dunham, advising them that Dunham had acquired the assets of Motor and that plaintiff was Dunham's marine and export agent, and advising Motor's customers to place all orders through plaintiff as they had done in the past; that on January 11, 1952 Dunham furnished plaintiff with new invoice forms and orders for sales, substituting the name Dunham for Motor, and also furnished the plaintiff with new stationery carrying the letterhead Dunham and the subhead "Reply to: W. P. Iverson & Co., Inc., Export and Marine Representatives"; that on January 10, 1952 plans were proposed by Dunham for advertising PD products, which plans were made in conjunction with plaintiff and Dunham contemplating a long range advertising campaign using plaintiff as Dunham's agent; that Dunham paid commissions in accordance with the contract between plaintiff and Motor and accepted sales made by plaintiff; that plaintiff, believing that Dunham had adopted the contract, continued to perform its duties thereunder as the agent of Dunham until April 30, 1952, at which time its further services were refused by Dunham. Both counts prayed for damages.

A motion to strike both counts of the amended complaint was filed by Motor, and a separate motion was

filed by Stewart, Dunham and National. In both motions, as one of the grounds, it was alleged that the contract is void for want of consideration and also that it lacks mutuality. That question was argued before us and must first be determined, since it is obvious that if there was no valid contract there could be no basis for the suit.

In order to determine whether or not the consideration is sufficient it is necessary to consider the contract as a whole. The contract, attached to the complaint, was entered into on June 1, 1950, between Motor Chemical Corporation and W. P. Iverson & Company, Incorporated, in the contract referred to respectively as "Motor" and "Company." It recites that Motor is engaged in the promotion of a product known as PD for association with fuel for use in internal combustion engines and a product known as PD-F for association with fuel oils for use in boilers on ships, and that the Company desires to promote PD and PD-F in certain territories and locations and Motor desires to have the Company make such promotion. It provides that Motor agrees to pay the Company commissions on sales in accordance with the provisions therein contained, and the Company agrees to do no advertising of the products without submitting the copy of the advertising to Motor for its approval, and Motor reserves the right to terminate the making of any sales if for any reason the activities of the buyer are not satisfactory to Motor. In the contract Motor reserves the right to terminate the agreement (1) if in any anniversary year the total of sales made by the Company pursuant to the terms of the agreement shall be less than $150,000, such termination to be effected by Motor giving to the Company written notice of such termination not less than 90 days prior to the effective date thereof; (2) if Motor elects to sell to another all of its right, title and interest in respect to

the promotion of PD and PD-F, by giving the Company written notice of such termination 60 days prior to the effective date thereof, and on the effective date paying to the Company a bonus in a sum equal to the commissions paid by Motor to the Company under the agreement during the two years immediately preceding such effective date, unless in connection with the said sale Motor works out with the purchaser an agreement under which the purchaser shall proceed with the Company on terms similar to the instant agreement; (3) if Motor elects to go out of the business of promotion of PD and PD-F, such termination to be effective by Motor giving to the Company written notice of such termination not less than 60 days prior to the effective date thereof; and (4) if W. P. Iverson, the present principal owner of, and in control of, the Company, shall cease to be the principal owner of or relinquishes control of the Company, or shall cease to be active in the affairs of the Company, which termination may be effective by Motor giving the Company 60 days' notice. There is a further provision that the contract is solely a sales agreement and nothing in the same shall be considered to give the Company any property or other right in or to the trade-marks and trade names of PD and PD-F. The Company on its part agrees that during the terms of the agreement and for a period of six months after the end of such term it will not engage in the promotion or sale, directly or indirectly, of any product competing or in competition with PD or PD-F, and Iverson, individually, makes the same agreement. It is also provided that no assignment of the agreement by the Company shall be of any effect without the written consent of Motor thereto.

Professor Williston in his treatise on contracts says: "Sufficient consideration in a bilateral contract may be defined as: Mutual promises in each of which

413

the promisor undertakes some act or forbearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promisee, and neither of which is void, are sufficient consideration for one another." Williston on Contracts, Third Edition, Section 103. In the instant contract Motor has promised to pay the Company designated commissions on such of the product as it might sell. In return for this promise the Company promises to forbear selling any product in competition with PD and PD-F. In Schweider v. Lang, 29 Minn. 254, 13 N. W. 33, quoted in Williston on Contracts, supra, the court says: "The case is, then, one of a promise on the part of the plaintiff to do something of advantage in law to the defendant, and on the part of the defendant to do something of advantage in law to the plaintiff—a case of mutual promises, one of which is the consideration of the other. The agreement was valid and binding upon both parties." Considering the promises in the case before us, that rule is applicable here.

■ The defendants contend that nowhere in the contract has the Company specifically agreed to sell any of the product and that consequently there is no mutuality of obligation. This contract, as like so many sales contracts of this type, has fixed no specific amount of goods on which Motor must pay commissions or which the Company must take or sell. However, it may reasonably be implied from the terms of the contract, particularly when we consider the clause dealing with advertising and the provision that Motor reserves the right to cancel the contract in case the Company's sales in any anniversary year are less than $150,000, that the Company would exercise its best effort to build up a market for and sell the product in question and would exercise good faith and reasonable diligence in obtaining orders, and that Motor would supply goods to a reasonable extent. As was said in

414

Wood v. Lucy, Lady Duff-Gordon, 222 N. Y. 88, 118 N. E. 214, the whole writing is "instinct with an obligation." See Corbin on Contracts, Vol. 1, Secs. 143, 152 and 155.

██ Neither does the fact that there are provisions in the contract permitting its termination by Motor under certain conditions have any effect on the question as to whether or not a valid contract had come into existence between the parties. These conditions are four in number: (1) in case the sales made by the Company fell below a certain amount in any one year; (2) if Motor sold its right, title and interest to PD and PD-F; (3) if Iverson should cease to be the owner of or be in control of the Company; and (4) if Motor elects to go out of the business of the promotion of PD and PD-F. The grounds for cancellation in (1) and (3) are based on matters outside the control of Motor and consequently could have no effect upon the validity of the contract. "The power to cancel certainly does not render the promise illusory if the power is itself conditional upon some voluntary act of the other party." Corbin on Contracts, Vol. 1, Sec. 165. In (2) the cancellation is conditioned upon Motor's paying to the Company an amount equal to the commissions paid to Motor during the two years immediately preceding unless there was a new sales agreement worked out between the Company and the purchaser. Neither that clause nor the clause permitting Motor to cancel the contract if it went out of the business of the promotion of PD and PD-F has any effect upon the validity or enforceability of the contract. Petroleum Refractionating Corp. v. Kendrick Oil Co., 65 F.2d 997. Contracts made for the period of the corporate existence of the parties are not unreasonable or void. Phoenix Hardware Co. v. Paragon Paint & Varnish Corp., 122 N. J. Eq. 140, 192 Atl. 45.

Motor also reserved the right to terminate the making of any sales if for any reason the activities of the buyer were not satisfactory to Motor. Such clauses have been interpreted as meaning that the company must exercise good faith in rejecting the sales and consequently the contract is sufficiently definite. Jay Dreher Corp. v. Delco Appliance Corp., 93 F.2d 275. Motor's promises, express and implied, were ample as a consideration, and the option to cancel did not make them illusory. Corbin on Contracts, Vol. 1, Sec. 169. We hold that the mutual promises afforded sufficient consideration for the contract.

 In the motion to strike it is also alleged that count one as amended did not state a cause of action, and the defendants contend that even if the contract should be considered valid the order of the trial court was proper. In Doremus v. Hennessy, 176 Ill. 608, the rule is stated that no persons, individually or by combination, have the right, directly or indirectly, to interfere with or disturb another in his lawful business or occupation, and loss so caused for motives of malice will sustain an action. Malice, as was stated in Meadowmoor Dairies v. Milk Wagon Drivers' Union, 371 Ill. 377, in such a case is the doing of such a wrongful act intentionally and without just cause. In the case before us it is alleged that Dunham, Motor, National, Leo Corporation, Stewart and Francis, or some of them, conspired together to defeat the rights of the plaintiff under the contract with Motor by causing Motor to be voluntarily dissolved for the purpose of avoiding the contract, and by causing the inventory of Motor to be acquired by, and the business of supplying PD products to be transferred to, Dunham. It is well settled that an action will lie ex delicto against one who intentionally and knowingly and without reasonable justification or excuse induces a breach

416

of a contract. It has been held that the executive officers of a corporation incur individual and personal liability for wilfully and maliciously inducing the company to breach its contract with another corporation. Fletcher Cyclopedia Corporations, vol. 3, sec. 1001.

The defendants contend that the action here brought would not lie because no action could be brought against Motor for breach of contract. Whether such an action could or could not be brought is immaterial in the case before us. The defendants have misapprehended the scope of the instant action. It is an action in tort based on the wrongful act of the defendants in maliciously causing the dissolution of the corporation in order to avoid the contract with the company. It has been held that maliciously causing a breach of a contract terminable at will is actionable. London Guarantee & Accident Co. v. Horn, 206 Ill. 493; Illinois Steel Co. v. Brenshall, 141 Ill. App. 36; Cook-Master, Inc. v. Nicro Steel Products, Inc., 339 Ill. App. 519. The gist of the action is the malicious interference in the contractual relationship between the Company and Motor and the fact that Motor could on its own option have terminated the contract by going out of the PD and PD-F business was not a defense. It is alleged that defendants have by malicious interference caused Motor to do an act which it otherwise would not have done. The fact that Motor, had such malicious interference not been exercised, might have had the right to so act does not relieve them from tort liability.

In Republic of Italy v. De Angelis, 206 F.2d 121, Judge Clark in his concurring opinion says:

"Perhaps the most useful and authoritative analysis of the subject is to be found in 4 Restatement, Torts, §§ 766 et seq. (1939), for which Professor Harry Shulman served as Reporter. According to § 766, the wrong is done when one 'without a privilege to

417

do so, induces or otherwise purposely causes a third person not to . . . perform a contract with another.' The comments illustrate the critical words and clarify the kind of intent requisite for liability. Thus Comment *d*, while stating that the rule 'applies to any purposeful causation,' continues: 'It is not necessary, however, that the purpose to cause the breach of contract or failure to deal be the actor's sole or paramount purpose. It is sufficient that he designs this result whether because he desires it as an end in itself or because he regards it as a necessary, even if regrettable, means to some other end.' And Comment *m* points out that 'ill will' toward the person harmed is not an essential condition of liability; the actor 'may be liable even when he acts with no desire to harm the other.' And as to the often cited requirement of malice it is said: 'But the context and course of decision makes it clear that what is meant is not malice in the sense of ill will but merely purposeful interference without justification.' "

The defendants also contend that where there is on their part an existing interest or a justification for interfering with or disturbing a contractual relationship no legal consequences will follow such act, and that, since as stockholders National, Leo Corporation, Stewart and Francis had a legitimate concern with Motor's contracts, they had the right to influence and control such contracts, even to the extent of inducing cancellation of any contract they deemed unfavorable to it. This argument begs the question. There is no doubt that the stockholders of a corporation have an interest in the corporation and they have the right to lawfully influence the action of the directors, as was stated in Petit v. Cuneo, 290 Ill. App. 16, cited by the defendants. To the same effect is Loewenthal Securities Co. v. White Paving Co., 351 Ill. 285, also cited by the defendants. The question

418

here is as to whether or not the influence exerted upon the directors of the corporation by the stockholders was lawful. It was not lawful if it was maliciously exerted in order that the corporation might escape the obligation of a contract.

It is true, as is argued by the defendants, that the acts of forming or dissolving corporate entities are, standing by themselves, legal and totally proper acts. Judge Clark further says in Republic of Italy v. De Angelis, supra:

"There is one more matter, namely, how far such matters of business justification gain strength because occurring through use of the device of the business corporation. Thus it is urged that stockholders may dissolve their corporation, in conformity with statute, without incurring liability for inducing the corporation not to perform its contracts. This is an interesting question; but there seems substantial authority upon it, and the overriding principles are not hard to state, whatever be the problems of their application. Indeed, one might deduce them from general propositions of corporate law; the corporate form of doing business is a useful instrument, but its abuse will be avoided by familiar devices, of which piercing the corporate veil is quite pertinent. So it is quite clear, and often reiterated, that directors, officers, and others interested in a corporation and acting in good faith *in the corporate interest* are not to be held for corporate actions which may constitute breaches of contract. . . . But the cases indicate their own natural limitations. Actions at variance with corporate needs and for individual benefit are subject to the ordinary rule for tortious misconduct. A succinct statement is made by Mr. Commissioner (later Chancellor and Mr. Justice) Oliphant in Pennington Trap Rock Co. v. Pennington Quarry Co., 22 N. J. Misc. 318, 38 A.2d 869, 871: 'The existence

of a corporation should never be allowed to shield an individual who is in control of that legal fiction from the consequences of tortious acts maliciously ordered or directed by him to be done and perpetrated through that instrumentality.' "

Vassardakis v. Parish, 36 F. Supp. 1002, is also cited by Judge Clark. In that case the court upheld a complaint charging a corporation's general manager with inducing breach of plaintiff's employment contract with it. In that case it is stated that an officer of the corporation "who, in good faith and believing it to be for the best interest of the corporation, seeks to have the corporation breach its contract with a third party, should be absolved from a suit of this character for the reason that his acts are not without justification." But after pointing out the allegations that the officer was acting for his own interest against those of the corporation, the court says: "It would be unconscionable to allow such a defendant to cloak himself with immunity merely because he was an employee or officer of the corporation." In Krauter v. Adler, 328 Ill. App. 127, the appeal was from an order striking the complaint of the plaintiff. The complaint alleged that the plaintiff procured the Bond Stores as a tenant for a building corporation, that they entered into a lease which provided, among other things, that the plaintiff was to receive 5% of the additional rental received by the building corporation from the Bond Stores, and that the defendants in order to avoid the payment of the broker's commission to the plaintiff conspired to and did cause the corporation to be dissolved and thereafter conveyed the interests of the corporation to the defendant. The court says: "Plaintiff's theory is that it is an actionable wrong for those in control of a corporation and who will receive its assets to dissolve a corporation to escape

420

the performance of its contract. Defendants' contentions are that the complaint does not state a cause of action. . . ." The court held that the complaint was improperly stricken.

 Defendants also contend that the complaint is bad because the allegations that various defendants conspired to commit the wrongful acts complained of and that some of them participated in the resulting benefits are conclusions of law and are not supported by ultimate facts. The complaint alleges a series of wrongful acts on the part of various defendants, and upon these wrongful acts the cause of action is predicated. It is alleged that National, Leo Corporation, Stewart and Francis, "or some of them" owned or controlled the patents and trade-marks relating to the said PD products; that Francis and Stewart were officers and directors of Motor; that Stewart was vice-president of both Motor and Dunham; that Dunham was a wholly owned subsidiary of National; that National, Motor and Dunham had the same Chicago address; that the defendants, "or some of them," secured from the plaintiff all the basic information used by plaintiff in carrying on its business, all of which information was conveyed to Dunham by the other defendants and that Dunham used the information and carried on the business which had been carried on by the plaintiff under the contract; that the defendants, or some of them, conspired in order to avoid the contract between the plaintiff and Motor, to cause Motor to be voluntarily dissolved and the assets of Motor to be dissipated by action of Motor's stockholders and the business of supplying PD products for fuel oil to be transferred to Dunham; that Dunham did take over plaintiff's business using as its base of operations an office acquired by it in New York City and thereby obtaining the benefits and profits of the contract between Motor and the plaintiff.

The allegations of the complaint regarding the conspiracy and the conduct of the defendants are allegations of ultimate facts and therefore sufficient. Goodman v. Goodman & Suss Clothes Corp., 68 N.Y.S.2d 281.

■■ In Pilurs v. Elco Const. Co., 16 Ill.App.2d 543, the Second Division of this court considered a somewhat similar case where the complaint was dismissed because of failure to state a cause of action. In that case the court points out that while a complaint is construed most strongly against the plaintiff, he is entitled to the reasonable intendments of the language used in the amended complaint and the plaintiff need not allege with precision facts which are within the knowledge of the defendants rather than the plaintiff, citing Field v. Oberwortmann, 14 Ill. App.2d 218. The court defines conspiracy as an agreement or combination formed between two or more persons to do an unlawful act or to do a lawful act by unlawful means, citing Franklin Union No. 4 v. People, 220 Ill. 355, and holds that the complaint sufficiently states a cause of action.

■ In the case before us the complaint sets out facts indicating that the alleged conspiracy to cause the corporation to be dissolved was for the benefit of one or more of the conspirators, and it alleges sufficient facts to support the charge that the defendants maliciously conspired with the end of causing the avoidance of Motor's contract with the Company.

■ Defendants also contend that the allegation that certain defendants, "or some of them," did certain things is insufficient. However, in Mitchell v. Geister, 337 Ill. App. 390, the court held that a complaint which recited that "plaintiff and James E. Chase, or one of them," did certain acts was sufficient and says:

"Sec. 43 of the Civil Practice Act (§ 167(2) ch. 110, Ill. Rev. Stats., 1947) provides:

" 'When a party is in doubt as to which of two or more statements of fact is true, he may state them in the alternatives . . .'

"Careful reading of the terms and purport of count 3 indicates that plaintiff is in doubt as to whether the evidence will establish that he alone procured the purchaser, or that James Chase will be shown to also have an interest, and plaintiff has endeavored, therefore, to phrase the complaint so that it will be adequate if the evidence indicates that Chase had an interest in the commission, to which plaintiff would be entitled by virtue of the assignment. This is clearly the type of situation contemplated by this section of the statute and under its terms plaintiff is entitled to plead in the alternative.

"Moreover, it is our opinion that these alternative claims may be presented in a single count, under the Civil Practice Act and supplemental rules promulgated by the Supreme Court of Illinois."

Under the rule laid down in that case the pleading in the case before us was a substantial compliance with the Civil Practice Act.

Motions to strike count two were made by both Motor and Dunham. One of the grounds urged is the invalidity of the contract. We have already disposed of that contention. It is also set out that the count fails to state a cause of action against either Motor or Dunham.

The plaintiff's theory is that count two alleges facts sufficient to show that Dunham adopted the contract with Motor and was now estopped to deny that it had so acted. Plaintiff cites and relies on the case of Wiggins Ferry Co. v. Ohio & M. Ry. Co., 142 U. S. 396, in which the court says: "If a person conduct him-

423

self in such manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations." In Chicago & A. R. Co. v. Chicago, Vermilion & Wilmington Coal Co., 79 Ill. 121, cited in the Wiggins case, the holding is the same.

The contract provided that in case of an election on the part of Motor to go out of the business of promotion of PD and PD-F the termination of the contract between Motor and the plaintiff should be effected by Motor giving notice sixty days prior to the effective date of the termination. There is no allegation in the complaint that such notice had been given and consequently no allegation that the contract had ever been terminated. The allegations in the complaint are in substance that Dunham acquired the PD business from Motor with full knowledge of the existence of the contract and all Motor's obligations and all plaintiff's rights under the contract; that Dunham by subsequent conduct with the plaintiff had assented to the assignment of the contract together with all rights and duties thereunder and had taken upon itself the obligation of discharging the duties of Motor to the plaintiff; and that the plaintiff, believing that there was such an assignment, assented thereto. In Corbin on Contracts, Vol. 4, Sec. 906, it is said: "If the assignee contracts with his assignor to discharge the duties of the assignor to the third party, the latter is a creditor beneficiary of that contract," and if the assignee fails to discharge those duties to the third party the latter can maintain suit. The acts of Dunham as pleaded would be sufficient to estop Dunham from denying that it had entered into such an agreement with Motor.

In the brief filed on behalf of certain of the defendants, Dunham, National and Stewart, two

424

letters are set out, both addressed to the plaintiff and signed by Motor, one dated December 13, 1951 and the other December 26, 1951, in which letters it is stated that Motor had been dissolved by action of the stockholders; that the contract between plaintiff and Motor had been terminated; that Dunham had acquired the PD inventory of Motor; that it had been arranged that Dunham would supply plaintiff with PD products during the contract 60-day cancellation period, commencing December 17, 1951; that during the cancellation period the plaintiff was instructed to bill customers in the name of Dunham, and that invoices for that purpose were being forwarded. In the two earlier and stricken complaints these letters were attached as exhibits by the plaintiff, and one of the grounds set forth by the defendants in each motion to strike was that the exhibits contradicted the allegations of the complaint. If the exhibits had been attached to the instant complaint and that point raised by a motion to strike, the action of the trial court in, striking the complaint would have been proper. Where the exhibits filed in support of a complaint are contradictory of the matter therein alleged the exhibits will prevail. 30 I. L. P. Pleading, sec. 144; Fetherston v. National Republic Bancorporation, 280 Ill. App. 151; Moone v. Commercial Casualty Ins. Co., 342 Ill. App. 596. However, it has been held that an amendment complete in itself, which does not refer to or adopt the prior pleadings, supersedes it and the original pleading ceases to be a part of the record, being in effect abandoned or withdrawn, with the result that the subsequent proceedings in the case are to be regarded as based upon the amended pleading, which will not be aided by anything in the prior pleadings. Wright v. Risser, 290 Ill. App. 576; Cantow v. Foute, 335 Ill. App. 574; Bradish v. Grant, 119 Ill. 606; 30 I. L. P. Pleading, sec. 193. The trial court in passing on the sufficiency

of the amended complaint could not consider the letters; nor can we. Without them the second count of the complaint states a cause of action against Dunham. It does not state a cause of action against Motor. Count two should not have been stricken as to Dunham but should have been stricken as to Motor.

The order of the Circuit Court is sustained in part and reversed in part. The part of the order striking count two of the complaint against Motor is affirmed. The part of the order which strikes count one of the complaint and also strikes count two as to defendant Dunham is reversed, and the cause is remanded with directions to proceed in a manner not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded with directions.

ROBSON and SCHWARTZ, JJ., concur.