Howard G. ZEYHER, Plaintiff-Appellant,

v.

S. S. & S. MANUFACTURING COMPANY, Inc., Defendant-Appellee.

Howard G. ZEYHER, Plaintiff-Appellant,

v.

The JASPER CORPORATION, Defendant-Appellee.

Nos. 13954–13955.

United States Court of Appeals Seventh Circuit.

June 28, 1963.

Thomas M. Merrill, Jr., Frederick C. Fiechter, Jr., Warren M. Ballard, Philadelphia, Pa., F. Wesley Bowers, Butt, Bowers & Angermeier, Evansville, Ind., for appellant.

Fred P. Bamberger, Evansville, Ind.; Bamberger, Foreman Oswald & Hahn, Evansville, Ind., of counsel, for appellee.

Before HASTINGS, C. J., and DUFFY and KILEY, JJ.

KILEY, Circuit Judge.

These diversity suits depend upon an alleged breach of a sales commission contract. They were consolidated for trial, without a jury, which resulted in findings and judgments for defendants. Plaintiff has appealed.

The alleged contract was made in Indiana by plaintiff and S. S. & S. Manufacturing Company, Inc. on August 27, 1959, for a term of three years during which plaintiff undertook to serve S. S. & S. as a sales engineer in selling its cabinets to the radio, television, and high fidelity industry. On October 28, 1960, the directors of Jasper Corporation agreed to acquire all of the stock of S. S. & S. On November 15, 1960, S. S. & S. notified plaintiff that the "contract" would not be honored by its new owner, the Jasper Corporation. These suits followed, charging S. S. & S. with breach of the "contract" and Jasper with the tort of inducing the breach.

### No. 13954

The District Court concluded the "contract" [1] lacked mutuality, certainty, and consideration; and that it was invalid and unenforceable. The conclusion rested on findings that the "contract" did not bind plaintiff to secure any orders, nor to sell a minimum or maximum of S. S. & S. products; did not provide for a reasonably certain way of determining the sales price or prices of S. S. & S. products; did not bind S. S. & S. to accept any orders submitted by plaintiff; and did not provide a formula for determining when, if any, an obligation to accept an order would arise.

Plaintiff does not specifically challenge the findings. He claims the District Court's conclusion is erroneous, and argues that S. S. & S. received all it bargained for and that consequently there was consideration. This argument assumes a "bargain" and that "plaintiff was to procure orders" from Warwick. Plaintiff begs the questions in the case.

The courts in Indiana "will not" find uncertainty in contracts if logical construction can find certainty, but to be valid and enforceable the contract must be reasonably definite and certain. International Shoe Co. v. Lacy, 114 Ind. App. 641, 53 N.E.2d 636 (1944). There the Appellate Court of Indiana en banc found that neither party could compel the other to perform and cited a decision of this court, Jordan v. Buick Motor Co., 75 F.2d 447 (7th Cir.1935), to support its decision that the alleged contract before it lacked certainty. This court, in Jordan, found the agreement too indefinite in that it failed, among other things, to specify the number of cars or models which were to be ordered or delivered, and the cost price or terms of payment.

We think these cases support the conclusion of the District Court, drawn from its unchallenged findings, that the alleged contract was invalid and unenforceable for lack of certainty and mutuality, and we hold that the conclusion is not erroneous. We find no obligation which either party can legally enforce against the other.

1. The "contract," in the form of a letter dated August 27, 1959, from the President of S. S. & S. Manufacturing Company, Inc., to Mr. Howard G. Zeyher, reads as follows:

"S. S. & S. Manufacturing Company, Inc., does hereby employ you as Sales Engineer for the sale of its products * * * for a period of three (3) years, upon the following terms and conditions:

"1. All orders received from * * * Warwick Manufacturing Corporation, will be * * * paid on the following basis:

"3% of Net Sales, less carton costs, F.O.B. Evansville, Indiana, until sales reach $500,000.00.

\* \* \* \* \*

"2. All commission shall be subject to payment by the customer.

"3. All quotations and commitments which shall be binding upon the S. S. & S. Manufacturing Company, Inc., must be on orders accepted in writing by the S. S. & S. * * * Each quotation shall clearly state the price, terms and conditions of sale."

The letter was signed by the President of S. S. & S., and, after the word "Accepted," signed by plaintiff.

W. P. Iverson & Co. v. Dunham Mfg. Co., 18 Ill.App.2d 404, 152 N.E.2d 615 (1958), cited by plaintiff, was a "malicious interference" case, in which the court decided initially that the alleged contract was valid and enforceable. The court found that though the contract did not express a specific amount of goods on which commission was to be paid, there was a provision that if Iverson & Co. did not sell at least $150,000 in any "anniversary year," the contract could be cancelled. The court thought that this implied enough specificity.[2] There is no such provision in the "contract" before us.

In Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214 (1917), the court implied consideration where defendant gave an exclusive agency, and unless the agent "gave his efforts, she could never get anything." That is not true of S. S. & S. because plaintiff did not have an exclusive agency. We do not find in the case at bar the facts which in Lady Duff-Gordon impelled the court to conclude that the transaction there "was instinct with obligation."

The claim in Eastern Paper & Box Co. v. Herz Mfg. Corp., 323 Mass. 138, 80 N.E.2d 484 (1948), was for damages for completed sales under an oral contract and not as here for damages for sales that might have been made by plaintiff. Moreover, in contrast to the case at bar, the plaintiff there *promised* to secure the United Drug business for defendant. In Mandel v. Liebman, 303 N.Y. 88, 100 N.E.2d 149 (1951), the court implied a "requirement" that plaintiff perform services. The contract there was "similar in most respects to contracts in current and general use in the entertainment industry." None of these cases militates against the District Court's conclusion in the case at bar.

Finally, we see no merit in the contention of plaintiff that his performance under the "contract" obviated whatever lack of certainty or mutuality may have existed when the "contract" was made.

This argument presupposes a valid contract. We have decided the District Court's conclusion that the "contract" was invalid is not erroneous. The case of Rubin v. Dairyman's League Co-op. Ass'n, 284 N.Y. 32, 29 N.E.2d 458 (1940) is not helpful to plaintiff. There the trial court had adopted a jury's finding that the contract was made and the decision was that the Co-op was bound to pay commissions for sales made before the contract was terminated because plaintiff had performed and the Co-op had accepted the benefits of his performance. Here plaintiff makes no claim for commission on orders he procured which defendant accepted.

We think that plaintiff's actions for S. S. & S. could not render the "contract" valid since it was, from the beginning, invalid and unenforceable. Red Wing Shoe v. Shepherd Safety Shoe Corp., 164 F.2d 415, 418 (7th Cir.1947). What transpired under the "contract" was "a series of fully executed orders, each complete within itself." 164 F.2d 415, at 419.

We do not reach the question of damages raised by plaintiff.

The judgment is affirmed.

### No. 13955

The District Court found that Jasper had neither ratified nor accepted the "contract" between plaintiff and S. S. & S., and that Jasper's purposes in acquiring control of S. S. & S. were neither to terminate the "contract" nor to cause damage to plaintiff. The court concluded Jasper had not induced or coerced the breach of a valid and enforceable contract between plaintiff and S. S. & S., and that plaintiff was not entitled to recover damages from Jasper for any alleged wrong done him.

It follows from our decision in No. 13954 that the District Court's findings in this tort action, dependent upon breach of the "contract," are not clearly erroneous and its conclusions are not erroneous.

The judgment is affirmed.

---

2. In addition, there were mutual promises in Iverson.