## SUMMERS *v.* STATE OF INDIANA.

[No. 25,823. Filed November 2, 1933.]

W. *Bert Conley*, for appellant.

*James M. Ogden*, Attorney-General, and *E. Burke Walker*, Deputy Attorney-General, for the State.

HUGHES, J.—This is a criminal prosecution instituted against the appellant by affidavit in two counts. The first count charging larceny and the second charging bank robbery.

He was tried by a jury, found guilty and sentenced to the Indiana State Prison for fifteen (15) years.

The error assigned is that the court erred in overruling appellant's motion for a new trial.

The appellant set out forty-four (44) reasons for a new trial, the first being, that the verdict of the jury is not sustained by sufficient evidence; the second that the verdict is contrary to law; reasons three to forty inclusive, that the court erred in giving and in refusing to give certain instructions. The forty-first is that based upon irregularity in the selection of the jury. The forty-second reason assigned is for misconduct on the part of the jury. The forty-third is for misconduct on the part of the prosecuting attorney, and the forty-fourth for the reason that the court erred in overruling the motion of defendant to withdraw the case from jury for misconduct of prosecuting attorney.

The appellant, in his brief, presents no propositions, points, or authorities upon any reasons assigned for a new trial except upon the 1st, 2nd, 26th, and 30th. The 26th reason for a new trial was for error committed in giving instruction No. 31 tendered by the state and the thirtieth reason was error committed by the court in refusing to give instruction No. 11 tendered by the defendant.

Under rule twenty-two (22) of this court it is provided that the brief of the appellant shall contain, under a separate heading of each error relied upon, separately numbered points, stated concisely and without argument, together with the authorities relied on in support of them. It has been frequently held that a failure to comply with this rule is a waiver of any alleged error complained of. *C. C. C. & St. L. R. R.* v. *Ritchey* (1916), 185 Ind. 28, 111 N. E. 913; *Baker* v. *Stehle* (1918), 187 Ind. 468, 119 N. E. 4; *Chicago R. Co.* v. *Dinius* (1913), 180 Ind. 596, 103 N. E. 652. Therefore those reasons assigned as error by the appellant where no propositions, points, and authorities are set out are waived.

The instructions complained of are not properly in the record. The appellant attempted to bring all the instructions into the record as provided by the code of civil procedure, Burns 1926, Secs. 585 and 586 (§§343, 344, Baldwin's 1934). The only method by which instructions in a criminal case can be brought into the record is by a bill of exceptions. This was not done in this case and therefore none of the instructions are properly in the record. Ewbanks' Criminal Law, 2d Ed., Sec. 627. *Sharp* v. *State* (1903), 161 Ind. 288, 68 N. E. 286; *McNaught* v. *State* (1923), 194 Ind. 209, 142 N. E. 418; *Foreman* v. *State* (1929), 201 Ind. 224, 167 N. E. 125.

The only question in this case for this court to consider is whether or not the verdict of the jury is sustained by sufficient evidence.

From the evidence in the case it appears that on March 11, 1929, the Perrysville Bank, Vermillion county, Indiana, was held up and robbed of $1,172. The robbery occurred about one o'clock P. M.

Quincy A. Myers, the banker, was in the bank alone. He described the robber to be a man of medium build,

with an aviator's hat on, with the ear flaps hanging over his ears, he had on eye glasses as if used in driving a car, and was wearing an overcoat. He told the witness Myers to "put them up" and then pushed a gunny sack through the window and said, "put it in there," and further said, "you didn't get it all." Then he ordered Myers to lie down on the floor and further said, "Lie down there. You are a pretty good old guy and I don't want any one hurt, and lie down and don't start anything or give any alarm until I've had time to get away." As soon as the robber left the bank, Myers heard a car going but he didn't see it.

Myers was acquainted with the appellant on March 11, 1929, but had not seen him for two or three years. It appears that the appellant had a peculiar voice. Mrs. Summers, wife of the appellant, stated on the witness stand, "You seldom hear a man's voice that sounds just exactly like his." On March 13 after the robbery the appellant was brought into the bank; Myers said he thought he was the man but could not positively identify him but recognized the voice as the same character of the one who robbed him. Myers was satisfied that he was the robber.

One Merle Talbot, a witness, stated he was waiting across the street from the bank at about ten minutes before one (12:50) and that he saw a man who wore an overcoat and a leather helmet which was not fastened under his chin, and a pair of driving glasses. Talbot said that he saw the man go to the bank door and try to get in, but it was locked. He turned and went back in the same direction and in about five (5) minutes Talbot saw the same man drive up in a Ford coupe and try the door again. The automobile appeared to be a 1925 model, with a large steering wheel and spotlight on the inside of the windshield.

Another witness, Frank Jester, saw the appellant in

Perrysville about twelve (12:00). He was in an old model Ford coupe. Frank Suitors, a witness, testified that he saw the appellant in Perrysville on March 11, between 12:30 and 1:00 P. M., and that he was in a Ford coupe and had an aviator's cap on his head with the earflaps hanging down loose at his side. Other witnesses testified they saw the appellant in Perrysville on March 11, in a Ford coupe with a spotlight on the windshield.

On March 14, the sheriff took the appellant to the Perrysville Bank and the evidence shows that the appellant on that occasion, in answering the question as to where he was on March 11, the day of the robbery, said he left home that day between nine (9:00) and ten (10:00) o'clock, and went to Covington and from there he went to Veedersburg and east of Veedersburg he met a man coming out of a filling station. They then went to Kingman and from there went home about four (4:00) P. M. He later said he and the stranger had some drinks and the stranger told him he would like to have his car for awhile, that he was going after a load. That he waited awhile and the stranger came back and handed him a roll of bills and said, "This is your share of the Perrysville robbery, I robbed the Perrysville Bank." The appellant said he deposited $150 in the Citizens' Bank at Covington; paid $160 to Mr. Woodrow, $135 to a Mr. Sipp, and he had $100 on his person.

Mrs. Summers testified that their son Harold had an aviator's cap and that the appellant sometimes wore it. She also testified that she was the owner of the Ford coupe that her husband was driving, and that it had a spotlight in front and a large steering wheel.

The appellant denied he was in Perrysville on March 11, and his explanation of why he told the officers one story and testified on the witness stand differently was

that he was under oath on the witness stand and was not when he told his first story.

The appellant in his evidence told of a mysterious rum runner who gave him a roll of money; that he did not know his name nor how much money he gave him. The whole story as related by the appellant seems clearly to be false and evidently the jury believed it to be false. It was the duty and right of the jury to weigh the evidence in this case and where there is evidence to support the verdict, this court on appeal will not disturb it.

We have read the evidence of the different witnesses and we are clearly of the opinion that it sustains the verdict and that the court did not commit error in overruling the motion for a new trial.

Judgment affirmed.