Marjorie J. RYAN

v.

Cynthia UPCHURCH, Sue Souders, Edward Sims, Charles B. Farr, Kenneth S. Axelson, J. C. Penney Company, Inc.

No. IP 78–218–C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

July 5, 1979.
As Amended Aug. 23, 1979.

Dennis D. Carroll of Blevins, Carroll & Shrock, Anderson, Ind., for plaintiff.

John W. Purcell and Michael R. Maine of Baker & Daniels, Indianapolis, Ind., for defendants.

## ORDER

STECKLER, Chief Judge.

This matter is before the Court on defendants' motion to dismiss, or in the alternative for summary judgment. Fed.R. Civ.P. 12(b)(6), 56. The Federal Rules state that if a court considers matters outside the pleadings in ruling on a 12(b)(6) motion, then the motion should be considered as one for summary judgment pursuant to Rule 56. Fed.R.Civ.P. 12(b). Therefore, this motion will be considered as one for summary judgment.

Plaintiff, in her complaint originally filed in state court, alleges that she was employed by defendant J. C. Penney Company, Inc. on March 3, 1971 and discharged on June 3, 1977. She avers that her employment was terminated in violation of her rights, contractual and otherwise, resulting in substantial damages. This action was subsequently removed to this Court pursuant to 28 U.S.C. § 1441 (1976).

In addition to J. C. Penney Company, Inc., plaintiff sued defendants Cynthia Upchurch, Sue Souders, Edward Sims, Charles B. Farr, and Kenneth S. Axelson. All of

these individual defendants are employees of J. C. Penney.

■ The general rule is that agents, if they are acting within their authority, are not personally liable for the breach of a contract entered into by them, in their role as an agent for a disclosed principal; such a contract only binds the principal. *See Thompson Farms v. Corno Feed Prods.*, Ind. App., 366 N.E.2d 3, 12 (1977); *see also* Restatement (Second) of Agency §§ 320, 328 (1958).

■ In the case at bar, it is clear that J. C. Penney, as employer, was known to be the principal, and all allegations of the existence of a contract directly concern J. C. Penney. Likewise, the allegations in paragraph two of the complaint made against these five individual defendants specify that they are "supervisors, officers and agents of the defendant, J. C. Penney Co., Inc." Plaintiff makes no allegation that the individually named defendants were acting outside the scope of their employment. Indeed, the complaint does not specify any acts of the individual defendants which contributed to the alleged harm. The result is that these five individuals should be considered agents acting for a disclosed principal.

Fed.R.Civ.P. 56(e) states:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Plaintiff has made two responses to this motion for summary judgment. *See* Plaintiff's Reply in Opposition to Defendants' Motion, filed June 5, 1978, and Plaintiff's Supplemental Affidavit and Memorandum in Opposition to Defendants' Motion, filed July 25, 1978. In neither response did plaintiff allege any "specific facts showing

that there is a genuine issue for trial" concerning these five individual defendants. Accordingly, summary judgment should appropriately be entered for them.

■ The next question concerns the liability of defendant J. C. Penney. Fed.R. Civ.P. 56(c) states that summary judgment should be rendered if the record indicates that there is no genuine issue as to any material fact. The party opposing the motion is to be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue exists that justifies proceeding to trial. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2725, at 510 (1973). It is clear that a party moving for summary judgment is not entitled to judgment merely because the facts he offers appear more plausible. 10 C. Wright & A. Miller, Federal Practice and Procedure § 2725, at 514 (1973).

Plaintiff, in her affidavit filed June 5, 1978, and supplemental affidavit filed July 25, 1978, alleges the following facts. She accepted J. C. Penney's employment offer in March 1971, because, among other things, the Company promised her that she would not be discharged except for just cause. This offer was made by Mrs. Adams, personnel manager at the Anderson, Indiana, store. Subsequent to her acceptance of the job, she was induced to remain with the Company and to commence participation in the firm's profit-sharing and pension plan by both Mrs. Adams and Mr. Eric Nance, her department manager, who assured plaintiff that she would not be discharged without cause. Plaintiff participated in the profit-sharing and retirement program in reliance upon those assurances that she would not be discharged without cause. Although she was later discharged, she had always complied with the Company's rules and J. C. Penney had no cause to fire her.

Defendant never submitted the affidavits of either Mrs. Adams or Mr. Nance controverting these averments, although other af-

fidavits for the defendant were filed with the Court. Of course, whether Adams or Nance dispute plaintiff's averments is irrelevant for ruling on the pending motion.

The Rules of Decision Act, 28 U.S.C. § 1652 (1976) states that "[t]he laws of the several states, except where the Constitution or treaties of the United States or acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." In this case, Indiana law must be applied. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Defendant J. C. Penney argues that plaintiff's employment relationship with it was terminable at will. It seems uncontroverted that plaintiff was not covered by a collective bargaining agreement, and defendant further asserts that there was no employment contract.

■ Whether there is a genuine issue concerning the existence of an employment contract[1] seems to be the critical inquiry. Defendant cites in support *Pearson v. Youngstown Sheet & Tube Co.,* 332 F.2d 439 (7th Cir. 1964), which construes Indiana law.

In *Pearson,* plaintiff sued his employer for breach of an implied contract of permanent employment. That, of course, is not the situation at bar. Here plaintiff is alleging that J. C. Penney, acting through its agents, expressly promised, as a term of the employment contract, that plaintiff would not be dismissed without cause.

Defendant's position is that even if that promise was made, it did not become part of an enforceable contract. This is because of the doctrine of "mutuality of obligation." In an employment contract like the one at bar, plaintiff was not bound; she could leave her position at her will. The mutuality doctrine then mandates that because the employee is not bound, the employer is not bound, even if it makes representations to the contrary.

■ The "mutuality" doctrine in contract law has been repeatedly confused by the courts. *See* 1 Williston on Contracts § 105A, at 422 (1957); G. Grismore, Principles of the Law of Contracts § 68, at 111 (J. Murray rev. ed. 1965). This is, in part, because there are at least three discrete mutuality concepts: (1) mutuality of assent; (2) mutuality of remedy; and (3) mutuality of obligation. *See* 1 Williston on Contracts § 105A, at 422 (1957); *see also* 1A Corbin on Contracts § 152, at 3 (1963) (Corbin lists a fourth category entitled mutuality of consideration). Unfortunately, many previous cases have not kept the doctrines separate, and by comingling their elements have distorted their purpose and meaning.

■ Confusion has resulted most frequently where one party is given an option, not accorded to the other, of discontinuing performance or of cancelling the contract. If the option goes so far as to render illusory the promise of the party given the option, there is indeed no sufficient consideration, and therefore no contract, but the mere fact that the option prevents the mutual promises from being coextensive does not prevent both promises from being binding according to their respective terms. 1 Williston on Contracts § 105A, at 424–25 (1957).

In *Shaw v. S. S. Kresge Co.,* Ind.App., 328 N.E.2d 775 (1975), the plaintiff-employee lost his breach of contract action against his employer. Plaintiff alleged he was discharged in violation of a company handbook

---

1. There is no statute of frauds problem in this case. To fall within the statute, the agreement must be one of which it can truly be said at the very moment that it is made that there can be not the slightest possibility that it can be fully performed within one year. *See* 2 Corbin on Contracts § 444, at 535 (1950). In this factual situation, J. C. Penney Company, Inc., if it had found just cause to discharge plaintiff, could have done so within the first year of the con-

tract. Accordingly, since there was the possibility at the time the contract was entered that it could be fully performed within one year, the statute of frauds is not a bar to the enforcement of this oral contract. *See also id.* at § 446, 549–50 (contracts for "permanent" employment are not within statute of frauds provisions); 9 Williston on Contracts § 1017, at 134 n. 19 (3d ed. 1967).

which governed employment conditions. The Court noted:

"Even assuming, arguendo, that the handbook relied upon by appellant constituted a part of the contract, in the absence of a promise on the part of the employer that the employment should continue for a period of time that is either definite or capable of determination, the employment relationship is terminable at the will of the employer. See: *Pearson v. Youngstown Sheet and Tube Co.* (7th Cir., 1964), 332 F.2d 439. There being no binding promise on the part of the employee that he would continue in the employment, it must also be regarded as terminable at his discretion as well. For want of mutuality of obligation or consideration, such a contract would be unenforcible in respect of that which remains executory. See: 1A Corbin, Contracts, § 152 (1963). See also 1 Corbin, Contracts, § 96 (1963); 3A Corbin, Contracts § 683 (1960)."

328 N.E.2d at 779.

If this case was the definitive Indiana decision in this area, the Court would be compelled to grant summary judgment to J. C. Penney. The *Shaw* court embraced the concept of mutuality of obligation. Since in the case at bar plaintiff was not bound to perform, her employer also could not be held liable under that doctrine, even if it made express representations to the contrary.

It should be noted, however, that Shaw's citations to Corbin are misleading. Corbin's position is that one party to a contract can be bound by its representations, even though the other party can terminate its performance at will.

"If an executed consideration is given by the promisee, a promise of employment on stated terms is not rendered unenforceable by the fact that the employment is to continue permanently, or for an indefinite period or as long as the employee wishes to stay. The employee is not bound; but the employer is bound. There is no mutuality of obligation; but there was other sufficient consideration."

1A Corbin on Contracts § 152, at 14 n.11.15 (1963).

In a different footnote in the same section, Corbin more explicitly rejects the type of analysis made by the *Shaw* court. Corbin critically analyzed *Hope v. National Airlines, Inc.*, 99 So.2d 244 (Fla.App.1958), an analogous case. Corbin writes:

"[In *Hope*] the defendant promised to give the plaintiff employment as long as it remained in business, in return for the plaintiff's continuing to work for the defendant during the period of a strike then existing. The plaintiff worked as requested and for some years thereafter, when he was discharged. So far as concerns services rendered, he had been paid in full. . . . The [*Hope*] court [held] that, since the plaintiff had made no promise and was privileged to quit at will, the defendant's promise of employment, so far as it was still executory, was unenforceable. This treatise does *not* support the decision."

*See* 1A Corbin on Contracts § 152, n.11.20 at 16 (1963) (emphasis supplied); *see also id.* at 17 (analyzing *Rape v. Mobile & O.R. Co.*, 136 Miss. 38, 100 So. 585 (1924)).

In fact, a later Indiana Appellate Court cited this section of Corbin's treatise with approval in *Seco Chemicals, Inc. v. Stewart*, Ind.App., 349 N.E.2d 733, 737–738 (1976). In *Seco*, the plaintiff-employee won his breach of contract action against his employer. Plaintiff signed a twenty-five month employment contract with defendant in which he was to be paid a salary plus commission. Unfortunately, plaintiff's sales efforts were so minimal that they did not even cover his salary and expenses. Consequently, he was discharged.

The defendant argued that the contract was unenforceable because there was no mutuality of obligation. The Court cited Corbin:

"[I]f the employer made a promise, either express or implied, . . . that employment is not terminable by him 'at will,' [then] after the employee has begun or rendered some of the requested service or has given any other consideration (or

has acted in reliance on the promise in such manner as to make applicable the rule in Restatement, Contracts, § 90), [the employer is bound to his promise]. This is true even though the employee has made no return promise and has retained the power and legal privilege of terminating the employment 'at will.' The employer's promise is supported by the service that has been begun or rendered or by the other executed consideration or action in reliance. There is a valid unilateral contract; there is an obligation although there is no 'mutuality of obligation.' There are, indeed, cases holding otherwise, in the belief that 'both parties must be bound or neither one is bound,' that for a valid contract there must be 'mutuality of obligation' (or something called 'mutuality'), and that if a contract is terminable 'at will' by one party it is necessarily terminable 'at will' by the other party also. These decisions can be found in considerable number; but the decisions to the contrary are far better considered, both in justice and in theory. 1A Corbin, *supra* § 152, at 13–17."

349 N.E.2d at 737.

The *Seco* court further stated that the "Indiana Rule" is that there is no mutuality deficiency where one party to an agreement acts upon the promises of the other party and performs his part of the agreement, because then the other party becomes bound by that performance. *See id.* at 738.

In this case, J. C. Penney allegedly promised Ryan that she would not be discharged except for just cause. Under the analysis suggested by *Seco*, when she acted in reliance on that promise by starting work and later continuing her employment when this promise was reiterated, J. C. Penney became bound to its promise by her performance.

One of the difficulties resulting from *Erie* is that it is not always easy and sometimes difficult to ascertain what the governing state law is. *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 208, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring). As long as there is diversity jurisdiction, "estimates" are necessarily often all that federal courts can make in ascertaining what the state court would rule to be its law. *Id.; see generally* H. Hart & H. Wechsler, The Federal Courts and The Federal System, 708–10 (2d ed. 1973).

The broad general rule announced in *Erie R.R. v. Tompkins* was that the federal court should apply state law as declared by the state legislature in a statute or by the highest state court. *See* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), the Court held that the state's highest court is the best authority on its own law. If there is no decision by that court, then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the state. *Id.; see West v. AT&T*, 311 U.S. 223, 236–37, 61 S.Ct. 179, 85 L.Ed. 139 (1940).

In the case at bar it is not clear whether the *Shaw* approach or the *Seco* analysis should be applied under the *Erie* doctrine. This is because the Indiana Supreme Court in two older [2] decisions has also given discordant rulings in this area.

In *Davis v. Davis*, 197 Ind. 386, 151 N.E. 134 (1926), the state high court sustained a demurrer by an employer to a former employee's complaint. The court held:

"To be enforceable a contract must bind both parties. And it is only when an employee has bound himself by a reciprocal undertaking, such as a contract to continue in the service of his employer for some fixed period of time, and to

---

**2.** Age is not a dispositive factor. In *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), the Court held that a 1910 Vermont decision was binding on a federal court over forty years later. However, the Court stated that "there appears to be no confusion in the Vermont decisions, no developing line of authorities that casts a shadow over the established ones, no dicta, doubts or ambiguities in the opinions of Vermont judges on the question, no legislative development that promises to undermine the judicial rule." *Id.* at 205, 76 S.Ct. at 277.

work during that period for a stipulated rate of compensation, that the refusal of his employer to furnish him employment for such time or any portion of it, or to pay him wages for days when he is not permitted to work, will give him a right of action for breach of the contract." 151 N.E. at 135. Such reasoning certainly appears to be similar to what is commonly referred to as "mutuality of obligation."

However, seven years later, in *Kostanzer v. State ex rel. Ramsey*, 205 Ind. 531, 187 N.E. 337 (1933), the court affirmed a lower court judgment reinstating a teacher to her quondam position. The court held:

"The Tenure Act permits a teacher to cancel [her] contract at any time after the close of a school term up to thirty days prior to the beginning of the next school term, provided five days' notice is given, and appellant contends that there was no contract between appellee and appellants for the reason 'that a contract which does not bind both parties binds neither of them.' This proposition is undoubtedly supported by the law of contracts. But there is nothing in the law of contracts to prevent one party to a contract granting to the other the privilege of rescission or cancellation on terms not reserved to the former party."

187 N.E. at 342. The *Kostanzer* court seemed to hold that an agreement is valid enough though there is no "mutuality of obligation." This, of course, is the same approach the appellate court in *Seco* took over forty years later.

This Court is confronted with two older, conflicting Indiana Supreme Court decisions and two recent, conflicting appellate court decisions. As such, it is no easy task to "ascertain from all the available data what the State law is." *See West v. AT&T*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Gates Rubber Co. v. USM Corp.*, 508 F.2d 603 (7th Cir. 1975) (Stevens, J.).

The *Erie* decision does not require a mechanical application of state precedent, even if in this instance such precedent could be found, any more than a state common law court would today equate the common law of its state with merely the results, and not the rationales, underlying prior cases. Even under *Erie*, federal diversity courts are common law courts, with all of the flexibility which that designation implies. *See* L. Tribe, American Constitutional Law § 3–31, at 119 (1978).

After an analysis of the leading authorities, this Court concludes that the better view rejects the so-called mutuality of obligation doctrine. It is quite possible that much of the attraction surrounding the mutuality of obligation doctrine is semantical. Austin, Mutuality of Obligation: A Multidimensional Doctrine for All Seasons, 30 Ohio St.L.J. 61, 61 (1969). The word mutuality connotes symmetry and fairness. However, there is nothing inherently fair [3] about symmetry, and this is especially so when the parties have bargained for different promises. In fact, in this case it seems peculiarly harsh for the Court to step in, after the contract has been partially performed, and allow the employer to discharge the employee at will merely because the employee, in exchange for other promises, bargained for the right to quit at will. The employer having made its promise to discharge the employee only for cause should honor that promise or pay damages; in the absence of fraud, mistake or overreaching it should not expect the Court to grant it the right to discharge an employee at will, a right which it apparently improvidently failed to bar-

---

3. "It may seem unfair, at first glance, that one party to a bilateral agreement should be able to enforce it while the other cannot. It appears unfair because this seems to lead to the conclusion that one party may demand and enforce performance of the other party's promise without himself having to fulfill his own undertaking. . . . [However] the modern law has come to recognize a doctrine of constructive conditions which is ample to protect the promisor whose promise is enforced, and to make it certain that he will not be required to perform his promise without getting the benefit of the agreed exchange for that promise. . . . [Accordingly,] there is no longer any great necessity in any case for holding that a promise that is non-binding is therefore insufficient consideration."

G. Grismore, Principles of the Law of Contracts § 68, at 114–15 (J. Murray rev. ed. 1965).

gain for. *See generally Littell v. Evening Star Newspaper Co.*, 73 App.D.C. 409, 410, 120 F.2d 36, 37 (1941); *Drzewiecki v. H. & R. Block, Inc.*, 24 Cal.App.3d 695, 101 Cal. Rptr. 169 (1972).

Lack of symmetry has rarely troubled the law of contracts. It is universally admitted that a promise that is not legally enforceable, *e. g.*, a promise voidable because of the infancy, or insanity, of the person promising, or because of fraud, duress or illegality, can be, nevertheless, a sufficient consideration to make a counterpromise binding and enforceable. *See* G. Grismore, Principles of the Law of Contracts § 68, at 113 (J. Murray rev. ed. 1965); *see also* L. Fuller & R. Braucher, Basic Contract Law 228 (1964); Williston, Consideration in Bilateral Contracts, 27 Harv.L. Rev. 503, 528 (1914). Additionally, it is generally accepted that the law will not inquire into the adequacy of the consideration to see if it is, in some rough fashion, equal.[4] *See* Restatement (Second) of Contracts § 81, Comment C (Tentative Draft); G. Grismore, Principles of the Law of Contracts § 68, at 115 (J. Murray rev. ed. 1965). If the promisor is content to make a bargain where the consideration is unequal there would seem little reason for refusing to sanction it, in the absence of fraud, mistake or overreaching. *See* G. Grismore, Principles of the Law of Contracts § 58, at 90 (J. Murray rev. ed. 1965).

It is clear that the doctrine of mutuality of obligation cannot be sustained on the basis of symmetry because the law of contracts has no symmetry requirement embodied within it. Further, a more sophisticated analysis reveals that the doctrine is in conflict with the traditional view of consideration. This is because a single and undivided consideration may be bargained for and given as the agreed equivalent of one promise or of two promises or of many promises. The fact that there are many promises given in exchange for the one consideration does not make it insufficient

as to any of them. 1 Corbin on Contracts § 125, at 535 (1963). Thus, in consideration of an employee's services, an employer may promise a salary and also promise not to discharge the employee except for cause. The employer's promises are supported by the employee's single promise to provide services. *See generally* J. Calamari & J. Perillo, Contracts § 75, at 146 (1970).

All of the commentators agree that it is consideration which is necessary to make the contract binding, not the requirement of mutuality, unless the want of mutuality would leave one party without a valid consideration for his promise. *See* 1A Corbin on Contracts § 152, at 5–6 (1963); Williston, Consideration in Bilateral Contracts, 27 Harv.L.Rev. 503, 525 (1914); Restatement (Second) of Contracts § 81 (Tentative Draft). The doctrine of mutuality of obligation appears therefore to be merely one aspect of the rule that mutual promises constitute considerations for each other. Where there is no other consideration for a contract, mutual promises must be binding on both parties. But where there is any other consideration for the contract, mutuality of obligation is not essential. *Meurer Steel Barrel Co. v. Martin*, 1 F.2d 687, 688 (3d Cir. 1924); G. Grismore, Principles of the Law of Contracts § 68, at 116 (J. Murray rev. ed. 1965) (the doctrine of mutuality of obligation has outlived any possible period of usefulness).

Accordingly, statements such as the ones appearing in *Shaw v. S. S. Kresge Co.* and *Davis v. Davis*, which in substance allege that "both parties to a contract must be bound or neither is bound" are erroneous to the extent they mean anything more than merely that consideration must be given. *See* Restatement (Second) of Contracts § 81, Comment f (Tentative Draft). Not only do voidable promises sustain contracts as mentioned previously, but as the preceding paragraph indicated, as long as there is consideration, any further requirement of "mutuality" is surplusage. *See generally id.*

4. The seminal case in this area is *Haigh v. Brooks*, 10 Adol. & Ellis 309 (Ex.Ch.1839), which held that the giving up of a worthless scrap of paper mistakenly thought to be a binding guaranty was sufficient consideration for a promise to guarantee the payment of £ 10,000.

To be sure, there are a substantial number of decisions which have held that employers' promises to their employees to discharge them only for cause are not binding. *See* Annot., 60 A.L.R.3d 226 (1974). However, as the preceding discussion revealed and Corbin points out, the decisions to the contrary are better considered, both in justice and in contract theory. *See* 1A Corbin on Contracts § 152, at 17 (1963).

As the preceding discussion indicated, this Court did not consider itself bound to follow the most recent interpretation of state law as set forth in *Seco Chemicals, Inc. v. Stewart.* Instead it looked behind that decision in an attempt to determine the present status of Indiana law. *See generally Warner v. Gregory*, 415 F.2d 1345, 1346 (7th Cir. 1969), *cert. dismissed*, 397 U.S. 930, 90 S.Ct. 817, 25 L.Ed.2d 112 (1970). The result this Court draws from that analysis is that the Indiana Appellate Court decision in *Shaw v. S. S. Kresge Co.* incorrectly states Indiana law.

■■■ In this instance, the latest Indiana Supreme Court decision, *Kostanzer v. State ex rel. Ramsey*, 205 Ind. 531, 187 N.E. 337 (1933), the latest Indiana Appellate decision, *Seco Chemicals, Inc. v. Stewart*, Ind. App., 349 N.E.2d 733 (1976), and the better view all come to the same conclusion: there should be no mutuality of obligation requirement. If one party to a contract makes representations, and the other party begins its performance of the contract relying on those representations, the first party is bound to keep its promise, even if only the latter party has the power to terminate the contract. Applied to these facts, if J. C. Penney promised Ryan that it would discharge her only for cause, and if Ryan began employment in reliance on that promise, then J. C. Penney must honor that commitment, even if Ryan could terminate the contract at will. In short, the Court's holding should be considered unsurprising, a contract for employment cannot be terminated at the will of the employer if he has made representations to the contrary.

In a supplemental brief, defendants cite the very recent Indiana case of *Martin v.*

*Platt*, Ind.App., 386 N.E.2d 1026 (1979). *Martin* was an action brought by two plaintiffs against a former employer claiming that they were discharged in retaliation for truthfully reporting "kickbacks." It was uncontroverted in *Martin*, in contrast to the facts in this case, that plaintiffs were employees at will. In dicta, the *Martin* court noted:

> "The general rule and great weight of authority is that where the duration of the employment contract cannot be determined from the terms of the contract, the contract is at will and either party may terminate it with or without cause at any time in the absence of contractual limitations."

*Id.* at 1028.

This passage from *Martin* can give no succor to J. C. Penney because it applies only "in the absence of contractual limitations." In the case at bar, plaintiff is alleging that Penney promised, as a term of the contract, not to discharge her except for just cause.

■■■ Further, it should be noted that the commentators do not agree with the statement in *Martin* that if the duration of the contract cannot be determined from the contract terms, then the contract is at will. *See* 1 Corbin on Contracts § 96, at 420–22 (1963); *see also id.* § 684 at 231 ("When parties make a contract of employment without specifying the length of service, but indicate that it is not terminable at will, the legal effect is that parties are bound for a 'reasonable time.')."

By reason of the foregoing, the motion of defendants Cynthia Upchurch, Sue Souders, Edward Sims, Charles B. Farr, and Kenneth S. Axelson for summary judgment is GRANTED; the motion for summary judgment by defendant J. C. Penney Company, Inc. is DENIED.

The Court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

Further proceedings in this court shall be stayed pending consideration of this order by the Court of Appeals.

IT IS SO ORDERED.